■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE CRESPO, Appellant.—Judgment, Supreme Court, New York County, rendered February 9, 1976, unanimously reversed, on the facts, and the indictment dismissed. Defendant-appellant was tried, together with his codefendant Sierra, on a six-count indictment, and convicted of assault, second degree; Sierra was acquitted. Defendant's main point on this appeal is founded on his claim that his defense of justification for use of a knife in the belief that he was about to be shot was not disproved beyond a reasonable doubt. (Penal Law, § 35.10, subd 6; § 25.00, subd 1.) We find in this connection that the verdict of conviction was against the overwhelming weight of credible evidence. The theory of the People's case was that the defendants had perpetrated an assault by stabbing one Correa as the aftermath of an attempted robbery of one Collado. Indeed, two counts of the indictment charged the attempted robbery in two degrees. The evidence, as pertinent, follows: Correa and Collado, musicians, who had finished their evening's work, were driven by their friend Cruz in the latter's car to Collado's home in upper Manhattan in the early hours of the morning. Collado, entering the lobby of the building, found two strangers—the defendants—in the lobby and promptly retreated, followed by them. Though he had said at the Grand Jury that they had knives, he did not so specify at the trial as to what they had. He hailed his friends, who were leaving in the car and they stopped. Collado was told by Cruz to go home, and he did so, unmolested; this completed his connection with the episode. Cruz never appeared at the trial; the court charged as to the unfavorable inference that might be drawn from his unexplained failure to appear. Thus, the only portion of the prosecution's case having to do with the stabbing came from Correa, who told a story of a completely unprovoked and unexplained attack with knives upon him by defendant and Sierra. As has been said, the defense was justification. The evidence was that defendant and Sierra, in the neighborhood for a visit, had been drinking rum in the lobby of Collado's building, out of the cold, when he entered and hurriedly left. (Collado testified that when he returned to the building, he found an empty rum bottle in the lobby.) They followed after him to explain that they meant him no harm and encountered Cruz, who, insisting that they were robbers, even after Collado went home unmolested, took a gun from the trunk of his car and handed it to Correa with instructions to guard them while he got something else from the car, and to shoot them if they moved. Defendant, believing his life to be in danger if he attempted to leave, jumped Correa and stabbed him, rendering him *hors de combat.* At this point, police arrived and found defendant and Cruz engaged in a shouting match, and Correa bleeding. They found a toy gun at the scene, claimed by Cruz and returned to him at the precinct, and for some unexplained reason never vouchered. Correa denied flatly that there had been any gun involved in the fray. Thus, to the extent indicated, defendant's version of the happening was corroborated by police testimony, and a doubt shown to be inherent in Correa's version of the incident. Ironically, though Correa was vague and indefinite as to who, Crespo or Sierra, stabbed him, it was defendant himself who testified that he did.

Though a point is made as to the correctness of the court's charge on duty to retreat before force may be used in self-defense (Penal Law, § 35.15, subd 2, par [a]), we find the court's instruction to have been correct. In the circumstances depicted, we believe that there is at least a reasonable doubt that defendant knew that he could "with complete safety as to himself * * * avoid the necessity of so doing [i.e., of using force] by retreating". These factors, weighed together with the absence of Cruz from the courtroom, the police corroboration as to presence of the gun, the swift allaying of Collado's fears, Correa's uncertainty as to the specifics of the stabbing, all lead irresistibly to the conclusion that the verdict was against the overwhelming weight of the credible evidence. Were we not dismissing the indictment, we would remand for a new trial on the basis of an improper summation by the District Attorney who used descriptive language, unfounded in the evidence, designed to indicate that the knife used was of a type that could not be possessed or used lawfully. Concur—Evans, J. P., Lane, Markewich and Sandler, JJ.