# THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY DAVIS, Appellant.

Fourth Department, July 11, 1986

## APPEARANCES OF COUNSEL

*Edward J. Nowak (Howard Broder* of counsel), for appellant.

*Howard R. Relin, District Attorney (Melvin Bressler* of counsel), for respondent.

### OPINION OF THE COURT

DENMAN, J.

██ ██ Defendant was convicted after a jury trial of assault in the second degree (Penal Law § 120.05 [2] [intentionally causing physical injury to a person by means of a dangerous instrument]). On appeal, defendant challenges the propriety of the court's instruction to the jury on the defense of justification, particularly the rules governing the use of deadly physical force and the opportunity to retreat, and of the court's twice repeating the charge upon the jury's request for further instructions. We find the court's instructions proper in all respects and therefore affirm.

Defendant was charged with stabbing his former housemate in the course of a street fight stemming from a dispute concerning their prior living arrangement. The prosecution's proof established that defendant had a chance encounter with the victim, David Reed, while attempting to retrieve his girlfriend's car parked in front of Reed's house. Reed swore at defendant, began to argue with him, and instigated a fist fight which lasted 5 to 10 minutes until both men became too tired to continue. Reed apparently had gotten the better of the match. Defendant then left the area in order to obtain gasoline for the car. Subsequently, he returned to the area, entered the car for a short time, then emerged and invited Reed to "finish the fight". When Reed approached for the second time, defendant pulled a knife from his sock,* grabbed Reed by the shirt, and slashed him on the leg, face, shoulder and

---

\* The knife was described as approximately 10 inches long with a 4- to 5-inch curved serrated blade.

forearm. Reed's neighbor, Alfred Brown, interceded and enabled Reed to break away. Defendant continued to swing the knife at Brown, who picked up a rake and began swinging it at defendant. When the rake broke, Brown ran into the house, returned with a butcher knife, and swung it at defendant without striking him. The confrontation ended when Brown threw down the knife and jumped into the truck of Nathaniel Moss, who took Reed to the hospital. The medical testimony established that Reed suffered major but not life-threatening injuries which required him to receive stitches to his shoulder and surgery to repair several tendons in his forearm. Reed testified that he was hospitalized four days, that he wore a cast for a month, and that he had to undergo three weeks of physical therapy in order to regain the use of the fingers on his left hand.

Defendant's testimony in support of his self-defense claim differed substantially although it conformed to that of the prosecution witnesses through the account of the initial fist fight. Then, however, defendant testified that when he returned to the scene with the gasoline, he looked in the car's glove compartment for a funnel. Instead, he found a knife which he placed in his sock in order to protect himself. As Reed approached within 5 to 10 feet of defendant, Brown also approached brandishing a machete. Defendant pulled the knife, but Brown and Reed continued to advance toward him. Before Brown came within six feet, defendant grabbed Reed, accidentally cutting him. Reed fled but Brown continued to threaten defendant with the machete until Brown's girlfriend persuaded Brown to put it down, whereupon Brown picked up the rake and began swinging it at defendant. Defendant left the area after Brown, Reed and Moss departed for the hospital.

Defendant's requested charge on justification concerned the use of ordinary physical force but omitted reference to the use of deadly physical force. In the alternative, defendant requested that the court charge in accordance with the criminal jury instructions insofar as the model charge dispenses with the retreat rule when defendant is threatened by an "up-lifted knife in close combat" and cautions against charging deadly physical force where defendant is accused of causing only ordinary physical injury (see, 1 CJI [NY] 35.00 pp 843-844, 851, 853). The court rejected defendant's requests and charged justification with respect to both physical force (see, Penal Law

§ 35.15 [1]) and deadly physical force, including opportunity to retreat *(see,* Penal Law § 35.15 [2]).

After deliberating about 1½ hours, the jury returned with a request that the court reinstruct it, *inter alia,* on the requirements for justification. The court indicated its understanding that the jury desired the "instructions regarding justification read back to you." The jury foreman said, "Yes". The court thereupon reiterated its charge on justification, asked the jury if it required anything else, and was told, "No". Defense counsel again specifically objected to the instruction on deadly physical force and retreat.

After an additional 3½ hours, the jury returned with a specific request that the court "reread justification", specifically, "retreat opportunity" and "physical versus deadly physical force". The court reiterated its justification instruction and the jury again retired without further questions or comments. Defense counsel again objected to the court's charging deadly physical force and retreat. Additionally, defense counsel objected to the court's "just read[ing] what it has previously read." The jury subsequently found defendant guilty of assault in the second degree.

■ Relying on the model charge and commentaries in the CJI, defendant contends that the court's charge on justification was erroneous. Specifically, he contends that the court erred in instructing on the use of deadly physical force where he was charged with inflicting only ordinary physical injury. Additionally, defendant contends that the court erred in charging on the opportunity to retreat when defendant was confronted by an "up-lifted knife in close combat". We find the court's charge to have been proper and defendant's challenge to be without merit.

There was ample evidentiary basis for delivering the charge on use of deadly physical force, including the duty to retreat. According to defendant's testimony, he pulled his knife when approached by Reed, who was not armed, and Brown, who was. However, even according to defendant's testimony, he stabbed Reed before Brown got close to him and Brown was never closer than six feet. The prosecution's proof, to the contrary, showed that defendant brandished and used the knife to inflict injury when confronted by a single unarmed man. Unquestionably, using a knife to inflict injury upon one's victim constitutes the use of deadly physical force *(see, People v Albino,* 104 AD2d 317, *affd for reasons stated below* 65 NY2d

843; *see also,* 1 CJI [NY] 35.00 p 846 [use of knife by assailant constitutes deadly physical force]; *cf. People v Dingley,* 50 AD2d 361, *revd on other grounds* 42 NY2d 888 [defendant's act in biting off victim's ear constitutes use of deadly physical force]).

The CJI admonition against charging duty to retreat where defendant is confronted by an "up-lifted knife in close combat" is inapplicable on these facts. However desirable it might be to dispense with that rule in a case where it is undisputed that defendant was confronted with deadly force *(see, e.g., Matter of Charles W.,* 61 AD2d 1033, 1034), here the prosecution witnesses testified that defendant stabbed an unarmed man. In these circumstances, the prosecution is entitled to have the jury measure defendant's justification defense by the more restrictive standard imposing on him a duty to retreat if he knows retreat is possible *(see, People v Dingley, supra,* pp 363-364, *revd on other grounds* 42 NY2d 888; *People v Crespo,* 64 AD2d 529, 530).

We reject defendant's contention, based on the advisory notes in the CJI, that a charge on deadly physical force is impermissible where defendant is charged only with inflicting ordinary physical injury. Defendant was indicted and convicted for assault in the second degree (Penal Law § 120.05 [2] [intentionally causing physical injury by means of a dangerous instrument]). Conviction of this charge requires proof that defendant employed deadly physical force because the definition of dangerous instrument tracks that of deadly physical force. "Deadly physical force" is "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [11]). "Dangerous instrument" is "any instrument * * * which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]). Since the charge against defendant required proof of his use of deadly physical force, the court properly instructed the jury on deadly physical force as part of defendant's justification defense.

We find those CJI advisory notes relied upon by defendant to be unpersuasive. The CJI proposes that the court should never instruct the jury on defendant's use of deadly physical force where defendant is charged with inflicting ordinary physical injury, as opposed to serious physical injury *(see,* 1 CJI [NY] 35.00 pp 843-844, 851), and makes no distinction

between situations in which the defendant is charged with inflicting physical injury with, for instance, his fists, and situations, such as here, where defendant is charged with inflicting physical injury by means of a deadly weapon or dangerous instrument. While the CJI thus correctly notes the correlation between the Penal Law definitions of "[s]erious physical injury" and "[d]eadly physical force", it ignores the similar correlation between the definitions of "[d]eadly physical force" and "[d]eadly weapon" and "[d]angerous instrument" (Penal Law § 10.00 [10], [11], [12], [13]). The CJI analysis, taken to its logical conclusion, would prohibit a court from instructing the jury on deadly physical force if a defendant shot at a complainant but either missed or only superficially wounded him. In order to justify his action, a defendant in such circumstances would have to show only that he reasonably believed his victim to be threatening the use of ordinary physical force, not deadly physical force. In addition, the People would not be entitled to show that defendant could have safely retreated without shooting his assailant. This hypothetical illustrates the flaws in the CJI analysis.

Although there is apparently no case law on point, *People v Albino* (104 AD2d 317, *supra)* supports our position by implication. There, defendant was charged with manslaughter in the first degree for intentionally stabbing one victim and with assault in the third degree (recklessly causing physical injury) for accidentally stabbing another who tried to intercede. The court held that, although it was error to fail to charge justification with respect to the assault, the justification charge given with respect to the manslaughter count, which presumably included the use of deadly force, was sufficient because defendant killed one person and caused only physical injury to another as a result of the same stabbing motion. We observe that application of the CJI analysis to the facts in *Albino* would have required the court to charge only physical force with respect to assault, an illogical result where the proof showed that defendant's infliction of ordinary physical injury upon one victim "involved the very same conduct as the manslaughter" *(People v Albino,* 104 AD2d 317, *supra).*

■ Defendant also contends that there should be a reversal because the court merely reread its instructions on justification in response to the jury's requests for further instructions. The court must give "meaningful supplemental instructions" in response to jury inquiries *(People v Malloy,* 55 NY2d 296, 301, *cert denied* 459 US 847; *see also, People v Almodovar,* 62

NY2d 126, 131-132). The factors to be evaluated in the determination whether the court responded meaningfully to the jury's inquiries are " 'the form of the jury's question, which may have to be clarified before it can be answered, the particular issue of which inquiry is made, the supplemental instruction actually given and the presence or absence of prejudice to the defendant' " *(People v Almodovar, supra,* pp 131-132; *People v Malloy, supra,* p 302). The court fails to give meaningful instructions where, in merely rereading its original instructions, it " ' "fails to give information requested upon a vital point" ' " *(People v Malloy, supra,* p 302, quoting *People v Gonzalez,* 293 NY 259, 263, quoting dissenting opn of Lehman, Ch. J., *People v Cooke,* 292 NY 185, 193). On the other hand, where the jury expresses no confusion and makes no specific requests for clarification, it is not error merely to reread the original charge. Indeed, in those circumstances, "a different charge may well be simply an exercise in semantics and could itself create the confusion sought to be avoided" *(People v Malloy, supra,* p 302). A controlling factor in whether the court erred in rereading its instruction is whether the original charge was clear and accurate *(People v Malloy, supra,* p 303).

Judged by the standard enunciated in *Malloy (supra),* the court did not err in reiterating its original instructions on justification. The first jury note requested reinstruction on the "requirements for justification". The court characterized this note as a request for a rereading of its original instructions, and the jury did not disagree with that characterization. After the court reread its instructions, the jury retired without further question or comment. After a few hours the jury specifically requested reinstruction on the difference between physical force and deadly physical force and on the law governing retreat. The court reiterated its instruction and the jury again retired without question or comment. The form of the jury's notes evinced no confusion or dissatisfaction with the court's charge and the jury asked no specific questions which the court failed to answer. As previously noted, we find that the court's instructions were in all respects proper and that the court did not err in rereading its charge on justification.

Accordingly, the judgment convicting the defendant should be affirmed.

CALLAHAN, J. P., DOERR, BALIO and SCHNEPP, JJ., concur. Judgment unanimously affirmed.