[786 NYS2d 428]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDREW GOLDSTEIN, Appellant.

First Department, November 30, 2004

34

**APPEARANCES OF COUNSEL**

*Andrew C. Fine* and *Laura R. Johnson, The Legal Aid Society*, New York City (*Natalie Rea* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Morrie I. Kleinbart* and *Patrick J. Hynes* of counsel), for respondent.

**OPINION OF THE COURT**

WILLIAMS, J.

On January 3, 1999, defendant, a schizophrenic, after alarming other commuters with his erratic behavior, shoved Kendra Webdale from the platform of the 23rd Street and Broadway subway station onto the train tracks in front of an oncoming N train. The incident received widespread media coverage. Defendant's first trial ended in a mistrial, and the proceedings in question on this appeal occurred at his retrial in February-March 2000.

Defendant raises several issues on appeal: (a) whether the trial court erred in precluding the testimony of his expert supporting the defense of extreme emotional disturbance (EED) on the ground that defendant gave inadequate notice pursuant to CPL 250.10; (b) whether the trial court improperly charged the jury that (1) in order to satisfy the insanity defense, defendant had to prove both that he lacked the capacity to understand the nature and consequences of his conduct and that the conduct was wrong, or (2) even if irresistible impulse was caused by

mental illness, it was not a defense; (c) whether the court improperly objected, sua sponte, to the testimony of a defense expert who opined that defendant's conduct was not intentional or of a depraved nature when he shoved Ms. Webdale in front of the train; (d) whether defendant was deprived of his right of confrontation, his right to present a defense or his right to due process when the trial court allowed the prosecution's forensic psychiatrist to testify to certain hearsay interviews she conducted in formulating her opinion or when the court precluded defendant from offering a Positron Emission Tomography (PET) scan in support of his insanity defense; and (e) whether defendant was denied effective assistance of counsel by counsel's failure to file adequate CPL 250.10 notice of the EED defense, or failure to object to the court's allegedly erroneous insanity charge, or by other alleged inadequacies of trial counsel.

■ Defendant's challenge to the court's preclusion of the expert witness who was to testify as to his EED defense is without merit. Defendant's constitutional argument in this regard, that he was denied the right to compulsory process or due process, was never raised below and is thus unpreserved (*see People v Gonzalez*, 54 NY2d 729 [1981]), and we decline to review this unpreserved claim in the interest of justice. Were we to review it, we would reject it. The court permitted defendant's late CPL 250.10 notice that he would offer an EED defense. Soon after the prosecution received notice that the expert had joined the defense team, they moved for information as to her interviews, investigations and conclusions, among other things, which defendant refused, expressly advising the court that the expert would not testify as to the EED defense. When the defense finally gave notice that the expert would testify as to the EED defense and, despite admonitions by the court, willfully refused to produce the expert's report on the eve of trial as the court ordered, the court precluded the witness (*see Noble v Kelly*, 246 F3d 93, 100 n 3 [2d Cir 2001], *cert denied* 534 US 886 [2001]; *People v Brown*, 306 AD2d 12 [2003], *lv denied* 100 NY2d 592 [2003]; *People v Walker*, 294 AD2d 218 [2002], *lv denied* 98 NY2d 772 [2002]; *see also* CPL 240.30 [1] [a]), but not the defense. Such preclusion was proper. Even if preclusion were error, we find it to be harmless, since the expert's testimony would have been seriously undermined by her admission in the report that defendant "totally denie[d]" that he felt any EED at the time of his misconduct. Furthermore, the expert testimony received at trial establishes, at most, defendant's anger and

embarrassment over rejection by women in general, or by a woman resembling the victim. Such emotions are " 'not equivalent to the loss of self-control generally associated with that defense' " (*People v Felix*, 232 AD2d 228, 229 [1996], *lv denied* 89 NY2d 864 [1996], quoting *People v Walker*, 64 NY2d 741, 743 [1984]).

■ Defendant's challenge to the trial court's insanity defense charge also requires preservation (*see People v Robinson*, 88 NY2d 1001 [1996]), and we decline to review this unpreserved claim in the interest of justice. Were we to review it, we would find that the error in question appears to be a transcription error (*People v Acosta*, 309 AD2d 521 [2003], *lv denied* 1 NY3d 624 [2004]; *People v Fernandez*, 287 AD2d 347, 348 [2001], *lv denied* 97 NY2d 704 [2002]; *People v Valdes*, 283 AD2d 187 [2001], *lv denied* 97 NY2d 688 [2001]), since the defense did not object when the charge was given, since in the other numerous instances where the standard was stated, it was stated correctly, since the error consisted of the inclusion of a single word— "not"—which, if removed, would render the charge entirely correct, and since another transcription error appears on the same page.

Defendant also challenges the portion of the court's insanity charge that distinguished between cognitive and volitional tests; this challenge requires preservation as well (*see People v Robinson, supra*), and we also decline to review this unpreserved claim in the interest of justice. Were we to review it, we would find that this portion of the charge was proper. Under New York law, a defendant's irresistible impulse to commit a crime does not immunize him or her from criminal liability (*see People v Wood*, 12 NY2d 69, 77 [1962]). Penal Law § 40.15 posits a cognitive test, i.e., it only allows a defendant to avoid criminal liability if he or she lacked substantial capacity to know and appreciate either the nature and consequences of his or her conduct or that such conduct is wrong. It is not sufficient that the defendant merely claim he or she was subject to an irresistible impulse (*see People v Hakner*, 34 NY2d 822 [1974]). In any event, the irresistible impulse defense allegedly offered by defendant was actually a cognitive defense, i.e., his "mental functioning was split off . . . in his head at the time such that he really did not comprehend what he was doing and that it was wrong," and in summation, defense counsel stated as much. Finally, defendant's reference to language in the Criminal Jury Instructions advisory notes suggesting a volitional test is

contradicted by other language in the notes correctly stating that New York relies upon a cognitive test, not a volitional one (*see* 1CJI[NY] 40.15, at 965A-965B, 965I-965J [Dec. 31, 1986]). The language suggesting a volitional test is incorrect and would not be controlling in any case (*cf. People v Davis*, 118 AD2d 206, 210-211 [1986], *lv denied* 68 NY2d 768 [1986]).

■ Defendant's challenge to the trial court's sua sponte objection to defendant's expert's testimony as to intent, and his related claims of deprivation of due process and his right to present a defense, require preservation (*see People v Robinson, supra*), and we decline to review these unpreserved claims in the interest of justice. Defendant did not object when the court intervened, and never made the argument at trial that he makes on appeal, that expert testimony on the ultimate issue before the jury is allowable "where the conclusions to be drawn from the facts 'depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence' " (*People v Cronin*, 60 NY2d 430, 432 [1983] [internal citations omitted]). Were we to review this claim, we would find that the court correctly intervened when the expert improperly invaded the province of the court by providing definitions of "intent" and "depraved indifference" which did not comport with the definitions under the law.

■ Defendant's challenge to the testimony of the prosecution's forensic psychiatrist as violative of his right to confront witnesses against him is without merit. He asserts that this testimony incorporated hearsay statements from various sources, e.g., psychiatric records, witnesses to the incident in question and to past incidents involving defendant, that the psychiatrist consulted in producing her evaluation of defendant, and that such interviews, particularly, are not generally accepted methodology in the profession and should not have been admitted into evidence as impermissibly denying him the right to confront these "witnesses."

Defendant's argument ignores the tenor of New York law in this regard. *People v Stone* (35 NY2d 69 [1974]) notes the CPL 60.55 requirement that a psychiatrist "must be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion" when opining on a defendant's sanity, and holds that a psychiatrist should be allowed access to "background information relevant and necessary to a sound medical opinion as to the defendant's sanity," and that testimony referring to such information is admissible as long as the opinion is

substantially based on her examination of defendant and facts in evidence (*id.* at 74-75). Such background data must be "of the kind ordinarily accepted by experts in the field [but] . . . [t]he policy . . . in a proper case must yield to a defendant's right to confront the witnesses against him" (*People v Sugden,* 35 NY2d 453, 459 [1974]). The recent United States Supreme Court decision in *Crawford v Washington* (541 US 36, 124 S Ct 1354 [2004]) is not inconsistent with these cases. *Crawford* held that the admission of "testimonial" hearsay without cross-examination violates the defendant's right of confrontation, regardless of the statement's reliability and, while declining to define "testimonial" hearsay statements, stated that the term includes "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations" (541 US at 68). *Howard v Walker* (2004 WL 1638197, 2004 US Dist LEXIS 14425 [WD NY 2004]) and *United States v Stone* (222 FRD 334 [ED Tenn 2004]), citing *Crawford,* have both upheld the use of nontestimonial hearsay statements in the formulation of an expert's opinion, rather than as proof of facts stated by the hearsay declarants.

Hence, contrary to defendant's contentions, the above New York cases and *Crawford* do not preclude admission of the prosecution's forensic psychiatrist's testimony regarding the background information upon which she relied in arriving at her expert opinion as to defendant's sanity. Rather, the former specifically encourage the use of such background information for that purpose, and the latter impliedly distinguishes its admission into evidence from that of "testimonial" hearsay directed towards proof of defendant's guilt or innocence.

■ Defendant's contention that the court improvidently exercised its discretion in precluding evidence in the form of a PET scan is also erroneous. The PET scan allegedly would have been material to one of the ultimate issues in the case since it would have supported an expert's opinion that defendant's brain physically manifested schizophrenia in the form of a "massive reduction in metabolism in the frontal lobe and the basal ganglia."

The record establishes that defendant's PET scan evidence was properly precluded. The prosecution had conceded defendant's mental illness, and their expert witnesses had testified that defendant was schizophrenic. Moreover, the special master appointed by the court stated that the test results could not

conclusively prove schizophrenia, but could only show an abnormality in the brain, which in either case would not be probative of the key issue of the insanity defense, i.e., whether defendant comprehended either the nature and consequences of his actions or that his actions were wrong, since a diagnosis of schizophrenia does not preclude per se that defendant is capable of such comprehension.

■ Finally, defendant asserts on appeal the ineffective assistance of counsel. He cites as grounds the defective CPL 250.10 notice of his EED defense and counsel's failure to object to the court's defective charge on the insanity defense, as well as counsel's alleged unfamiliarity with fundamental principles of criminal law and practice.

In the first instance, the trial court did not find the CPL 250.10 notice to be defective; in fact, it denied the prosecution's motion to preclude the EED defense. Instead, the court's decision to preclude the defense expert witness was based on counsel's refusal to set forth how the witness's testimony would relate to the EED defense. While it cannot be discerned clearly from the record why counsel chose to proceed this way, he may arguably have had legitimate reasons, since the expert's report states that defendant adamantly denied feeling any extreme emotions when the incident occurred. Hence, counsel may have felt that the only chance for the expert's testimony to have any value at trial would be if the prosecution received the report with little time to address its weakness. It is revealing that the trial court noted the apparent gamesmanship involved on this issue.

Secondly, as we have noted, defense counsel's failure to object to the trial court's alleged error in stating the insanity charge, along with other relevant circumstances, lead us to the conclusion that the error was more likely one of transcription than of misstatement. Thus, we do not find it to be a reflection of ineffective assistance of counsel.

We have considered defendant's remaining arguments regarding ineffective assistance of counsel and find them to be without merit.

In general, we find that the record evidence overwhelmingly establishes defendant's guilt beyond a reasonable doubt and that he failed to establish a lack of responsibility due to mental disease or defect. Based upon the uncontroverted testimony regarding his planning and execution of the carefully measured attack upon Ms. Webdale, he clearly understood both the nature

and consequences of his conduct and that it was wrong. Moreover, his conduct that day, including his efforts to manipulate the postattack consequences to himself, echoed the element of calculation that accompanied his prior attacks upon women.

Accordingly, the judgment of the Supreme Court, New York County (Carol Berkman, J.), rendered May 4, 2000, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, should be affirmed.

People's motion seeking leave to file a surreply addressing issues raised by *Crawford v Washington* (541 US 36, 124 S Ct 1354 [2004]) granted.

NARDELLI, J.P., TOM and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered May 4, 2000, affirmed. People's motion seeking leave to file a surreply addressing issues raised by *Crawford v Washington* (541 US 36 [2004]) granted.